ELIZABETH FARRELL, OSB No. 011107
Farrell Employment Law, LLC
E-mail address: farrelllaw@hotmail.com
324 S. Abernethy Street
Portland, Oregon 97239
Telephone: (503) 277-2087
Facsimile: (503) 357-4181

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| GENAVIEVE SHARKEY, | **Case No.  1:24 CV 86** |
| Plaintiff, | **COMPLAINT** |
| v. | ORS 659A.030, ORS 659A.183, ORS 659A.199, ORS 659A.203, Family and Medical Leave Act, Title IX, 42 U.S. Code § 1983, Defamation, and Intentional Interference with an Economic Relationship |
| SOUTHWESTERN OREGON COMMUNITY COLLEGE, RACHELE LYON, an individual, ALI MAGEEHON, an individual, and PATTY SCOTT, an individual, | |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this action under ORS 659A.030, ORS 659A.183, ORS 659A.199, ORS 659A.203, The Family Medical Leave Act, Title IX, 42 U.S. Code § 1983 for retaliation and violation of the First Amendment, defamation, and intentional interference with an economic relationship.

Page 1 – COMPLAINT

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction. This Court also has pendant jurisdiction over the State Law claims.

3.      Venue is within the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District, and, at all relevant times, the parties resided in or did business in the State of Oregon.

4.      Plaintiff made notice of her tort claim on Defendants on or around July 17, 2023, and on or around August 2, 2023.

## PARTIES

5.      Plaintiff was hired by Defendant Southwestern Oregon Community College ("SOCC") in November 2016 as a Career Coach. Plaintiff currently holds the position of Director of Opportunity Programs, began in 2019. At all relevant times Plaintiff was a resident of the State of Oregon. SOCC is and was, at all material times, a public college conducting business in the state of Oregon. At all material times, SOCC's employees were acting within the course and scope of their employment.

6.      Defendant Rachele Lyon ("Lyon") (Vice President of Administrative Services), was, at all material times employed by SOCC, and was acting, at least in part, with the purpose to serve the SOCC.

7.      Defendant Ali Mageehon ("Mageehon") (Vice President of Instruction and Student Services), was, at all material times, employed by SOCC and was acting, at least in part, with the purpose to serve SOCC.

Page 2 – COMPLAINT

ELIZABETH FARRELL
Farrell Employment Law, LLC
324 S. Abernethy Street
Portland, Oregon 97239
503-277-2087

8.      Defendant Patty Scott ("Scott") (President), was, at all material times, employed by SOCC and was acting, at least in part, with the purpose to serve SOCC.

## STATEMENT OF FACTS

9.      Plaintiff began her career with SOCC in November 2016 as a Career Coach, and currently serves as the Director of Opportunity Programs. Plaintiff was first promoted to the role of Manager and then Director in 2019. Throughout her tenure with SOCC, Plaintiff consistently excelled receiving excellent performed evaluations.

10.     Plaintiff built the Opportunity Programs Department from scratch. The Department assists low income, minority, and underserved community members in gaining education and employment skills. These programs have consistently been rated number one in the State, outperforming and exceeding all goals and outcomes year after year.

11.     Beginning in the summer of 2021, Plaintiff observed that male staff were being paid significantly higher starting salaries than female staff and were regularly promoted and provided with opportunities that female staff were not given.

12.     Some examples of this preferential treatment include, but are not limited to, the following instances:

- Clayton Willet (male Career Coach) promoted to Coordinator (equivalent to Manager position) was given the opportunity after only six months to gain a large salary increase. When a female Career Coach, Corin Liggett (Gibson), was promoted to Coordinator, she received the same starting salary as the male, but no opportunity for the six-month increase. Ms. Sharkey requested

Page 3 – COMPLAINT

ELIZABETH FARRELL
Farrell Employment Law, LLC
324 S. Abernethy Street
Portland, Oregon 97239
503-277-2087

this same opportunity for the six-month increase in June of 2021, but Lyon
denied her this opportunity.

- Daniel Walter's (male Career Coach) hourly average is currently much higher
  than his female Supervisor's (Corin Liggett) hourly average. This
  discriminatory pay disparity is ongoing since 2021.

- Erik Graf (male Benefits Navigator (Career Coach level)) was hired in at well
  above the job posted salary in January, 2023, and received the same salary as
  his female Supervisor's (Summer Gray) starting Coordinator salary.

  o This female Supervisor staff was the second female that Ms. Sharkey
    promoted from Career Coach/Benefits Navigator to Coordinator and was
    given the same promotional starting salary as the other female. Again, this
    female was not allowed the six-month increase that the male was offered.

- All males hired into the Opportunity Program Department as Career
  Coach/Benefits Navigator entry level position were hired in at significantly
  higher pay rates than females, at the direction of Lyon.

13.    Plaintiff was subjected to differential treatment than her male counterparts in
terms of the enforcement of SOCC policies and rules. One example relates to SOCC's policies
and procedures for work-related travel. In the spring of 2023, Plaintiff received authorization and
preapproval for a work trip to Hawaii after meticulously submitting all the requisite information,
yet was placed on administrative leave and accused of failing to follow policies and procedures
and misappropriation of SOCC's money. Plaintiff's male counterparts have actually violated
travel policies, yet were not placed on administrative leave.

Page 4 – COMPLAINT

14.    In November 2020, while Plaintiff was on bereavement leave for the death of her father, Plaintiff's then manager, Meredith Stone (Dean of Instruction and Director of Adult & Pre-College Education) ("Stone"), repeatedly and regularly sent emails to Plaintiff regarding work-related issues. In one such email, Stone stated that Plaintiff was causing stress by requesting training of staff in "too demanding" of a manner.

15.    Plaintiff forwarded the email to Lyon and raised concerns about the sexist nature of Stone's statements as well as the fact that Stone should not be communicating with Plaintiff regarding work issues during Plaintiff's medical leave.

16.    Later, in February 2022, when Plaintiff took medical leave to care for her mother, Stone again repeatedly contacted her regarding work-related issues. In one such contact, Stone told Plaintiff that Plaintiff's co-workers were "drowning" without her there in the office.

17.    During this same medical leave, Plaintiff's staff repeatedly contacted her by phone and email with work-related questions.

18.    Plaintiff, again, reported her concerns to Lyon and stated these were violations of the medical leave laws.

19.    When Plaintiff returned to work after her medical leave, Stone made negative comments on her performance evaluation, referencing Plaintiff's "unexpected absences" and "training issues." Both of these comments related directly to Plaintiff's two medical leaves.

20.    Plaintiff raised her concerns with Stone about these negative remarks and how they violated the medical leave laws, and Stone agreed that the negative remarks were related to her time off of work while on medical leave. Stone noted this fact on the written evaluation, but did not remove the negative comments from Plaintiff's performance evaluation.

Page 5 – COMPLAINT

21.     Plaintiff raised the issue with Lyon, by email, and Lyon ultimately responded that Plaintiff did not need to sign the evaluation if she disagreed with it.

22.     When Plaintiff continued to push the issue with Lyon, Lyon responded that she would refer the matter to Scott. Neither Scott nor Lyon follow up with Plaintiff regarding this issue again. Scott ignored Plaintiff's request to have the negative remarks removed from her written evaluation.

23.     In April 2023, Plaintiff raised the issue with Jared Gardner ("Gardner") (Dean of Student Services), who also ignored her complaints.

24.     In February 2023, Gardner became Plaintiff's new direct supervisor. It became immediately clear to Plaintiff that Gardner has a problem with women as he constantly speaks over her and interrupts her during their in-person meetings. On one occasion, Gardner repeatedly muted only Plaintiff during a Zoom call and locked her mute button so she could only speak when he permitted her to do so.

25.     Gardner also took the unprecedented step of rehiring a male employee into Plaintiff's department without her consent or knowledge. Plaintiff had previously raised several concerns about this particular employee to both Gardner and Lyon. These concerns included complaints that the employee ignored direction as well as he hid, deleted, and manipulated reporting, purchasing, and other important documents.

26.     Gardner also took the unprecedented step of frequently pulling Plaintiff's staff into his office without her to have private meetings with them. On one such occasion, he interrogated a female staff member with a documented ADA disability involving food diseases about every bite she consumed on a college trip even though her meal expenses had been

Page 6 – COMPLAINT

considerably under the approved amount. When Plaintiff confronted Gardner later about this interrogation, he ignored her and has since refused to document anything in writing with Plaintiff.

27.      On June 21, 2023, Plaintiff complained to Lyon and Mageehon regarding Gardner's discriminatory behavior towards her because of her gender. Both Lyon and Mageehon ignored Plaintiff's clear complaints of gender discrimination and hostile work environment and failed to initiate any type of investigation as required under SOCC's policy.

28.      Approximately one week later, on June 28, 2023, Lyon and Mageehon called Plaintiff into a meeting. The purpose of the meeting was not to discuss Plaintiff's complaints about gender discrimination and hostile work environment, but was, instead, for alleged "misuse/mismanagement of grant funds" as related to a fully approved work trip to Hawaii. Mageehon informed Plaintiff that Scott was "appalled" at Plaintiff, to which Plaintiff responded that Scott had approved her travel plans in advance of the trip.

29.      Plaintiff has traveled on multiple occasions during her employment with SOCC and is well aware of the policies and procedures for obtaining approval for such travel prior to dates of travel. Plaintiff has never received any warning related to her spending on these trips.

30.      Before the trip in question, Plaintiff and her accompanying staff were particularly careful as it was Plaintiff's first work-related trip out of state, in obtaining the appropriate approval from Cheri Rescorla ("Rescorla") (Payable Bookkeeper), Stone, and Scott. Plaintiff was asked multiple questions prior to her travel, which she answered appropriately and well in advance of the trip. Plaintiff also asked many questions prior to the trip to ensure she was following all proper procedures.

Page 7 – COMPLAINT

31.    Plaintiff has repeatedly complained to Cally Steensen (Grant Accountant) ("Steensen") and Leigh Fitzhenry (Executive Director of Business Services) ("Fitzhenry") about SOCC's misuse/mismanagement of funds. On one occasion, SOCC diverted money from House Bill 2835 funds into the College General Fund. Plaintiff repeatedly complained, and the money was ultimately returned to the appropriate place, but only after Plaintiff notified the State of Oregon Higher Education Coordinating Commission (HECC).

32.    Another example of the recent misuse/mismanagement by SOCC of grant funds occurred when an employee was illegitimately paid for a full month of salary in June 2023. The employee should not have received any pay for that month. When Plaintiff notified Lyon of the error on the payroll date of June 10, 2023, Lyon did nothing to rectify the matter. In July (the beginning of a new fiscal year), Lyon took the employee's full July paid leave and incorporated it into the June salary payment. Once again, the employee was paid a full salary for July out of the same grant funding.

33.    SOCC continued to misuse and mismanage Opportunity Program funding when they invoiced an Oregon Department of Human Services (ODHS) contract in full, then proceeded to request personal payments from two of Plaintiff's staff on travel that they had already fully invoiced ODHS on.

34.    In July of 2023, during Plaintiff's administrative leave, Mageehon contacted Southwestern Oregon Workforce Investment Board ("SOWIB") where Plaintiff had worked in various capacities since 2015, and informed SOWIB that Plaintiff had misused and mismanaged SOCC state and federal grant funds. At the time, Plaintiff was contracted to work with SOWIB through October of 2023.

Page 8 – COMPLAINT

35.     At the end of Plaintiff's contract with SOWIB in October, the Organization did

not renew Plaintiff's contract. The contract had previously been slated for renewal for a total of

$20,000.

36.     Also, during Plaintiff's administrative leave, SOCC ignored Plaintiff's repeated

requests to place a notification on her email and phone stating that she was out of the office.

SOCC failed to do so for months, resulting in hundreds of emails and voicemails, directed to

Plaintiff, being ignored. As a result, Plaintiff lost opportunities for consultant and mentor work

and suffered damage to her reputation.

### FIRST CLAIM FOR RELIEF
### (ORS 659A.030 – Gender Discrimination - Hostile Work Environment)
### (Against SOCC)

37.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

38.     Each and every one of the particulars alleged in paragraphs 11 through 13, and 23

through 26, above, violates ORS 659A.030(1)(a) and (b) in that they constitute gender

discrimination and a hostile work environment.

39.     SOCC's employment practices, as alleged above, deprived Plaintiff of equal

employment opportunities and otherwise adversely affected her status as an employee. As a

direct and proximate result of SOCC's discriminatory conduct, Plaintiff has suffered, and

continues to suffer, lost income and benefits of employment, including prejudgment interest, all

to her economic damages in the amount of $29,500.00 This amount may be amended at or before

trial.

40.     As a direct and proximate result of SOCC's discriminatory conduct, Plaintiff has

suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss

ELIZABETH FARRELL
Farrell Employment Law, LLC
324 S. Abernethy Street
Portland, Oregon 97239
503-277-2087

of enjoyment of life and is entitled to an award of compensatory damages in an amount to be determined at trial.

41.     Pursuant to ORS 659A.885(1) and 20.107, Plaintiff is entitled to an award of attorney's fees, expert fees, and costs incurred herein.

## SECOND CLAIM FOR RELIEF
### (ORS 659A.030 - Retaliation)
### (Against the SOCC)

42.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

43.     SOCC created a hostile work environment for Plaintiff and placed Plaintiff on administrative leave, spread false rumors about Plaintiff, and refused to place the appropriate notifications on Plaintiff's email and voicemail, all, in substantial part, in retaliation for her complaints regarding gender discrimination, as alleged above in paragraphs 27 through 28 and 34 through 36.

44.     Plaintiff was subjected to differential treatment, and her complaints were never appropriately addressed.

45.     SOCC's employment practices, as alleged above, deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee. As a direct and proximate result of SOCC's discriminatory conduct, Plaintiff has suffered, and continues to suffer, lost income and benefits of employment, including prejudgment interest, all to her economic damages in the amount of $29,500.00. This amount may be amended at or before trial.

46.     As a direct and proximate result of SOCC's discriminatory conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss

Page 10 – COMPLAINT

of enjoyment of life and is entitled to an award of compensatory damages in an amount to be determined at trial.

47.     SOCC acted with malice or with reckless indifference toward Plaintiff's protected rights.  Accordingly, punitive damages should be awarded against SOCC in an amount to be determined at trial.

48.     Pursuant to ORS 659A.885(1) and 20.107, Plaintiff is entitled to an award of attorney's fees, expert fees, and costs incurred herein.

**THIRD CLAIM FOR RELIEF**
**(ORS 659A.183 Oregon Family Leave Act Violations)**
**(Against the SOCC)**

49.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

50.     Plaintiff, at all material times, was an eligible employee under ORS 659A.156.

51.     SOCC, at all material times, was an employer covered under ORS 659A.153.

52.     Plaintiff took medical leave to which she was entitled under the Oregon Family Leave Act ("OFLA") as described above in paragraphs 14 and 16.

53.     SOCC interfered with Plaintiff's rights to take medical leave by contacting Plaintiff for work related issues while she was on medical leave as described above in paragraphs 14, 16, and 17 and by retaliating against Plaintiff, in substantial part, for invoking her rights to medical leave by holding Plaintiff's time off of work for medical leave against her in her performance evaluation as described above in paragraph 16, 19, and 20.

54.     SOCC's actions, in this regard, violated Plaintiff's rights under OFLA and deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status

Page 11 – COMPLAINT

as an employee.  As a direct result of said conduct, Plaintiff suffered lost earnings, perquisites and benefits in an amount to be determined at trial.  Plaintiff is entitled to prejudgment interest.

55.     As a result of the foregoing conduct, Plaintiff suffered severe emotional distress, which included, but was not limited to, embarrassment, humiliation, anxiety, emotional distress, depression, and injury to her non-economic damage pursuant to ORS 659A.885 in an amount to be determined at trial.

56.     As a further result of said conduct, Plaintiff is entitled to her costs, disbursements, expert witness fees, prejudgment interest, and reasonable attorney's fees pursuant to ORS 659A.885 and ORS 20.107.

### FOURTH CLAIM FOR RELIEF
### (Family and Medical Leave Act)
### (Against the SOCC)

57.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

58.     Plaintiff, at all material times, was an eligible employee under 29 USC § 2611.

59.     SOCC, at all material times, was an employer covered under 29 USC § 2611.

60.     Plaintiff attempted to take medical leave to which she was entitled under FMLA as described in paragraphs 14 and 16.

61.      SOCC interfered with Plaintiff's right to take medical leave and retaliated against Plaintiff for taking medical leave as described above in paragraphs 14 through 17, 19, and 20.

62.     Plaintiff is entitled under 29 USC § 2617(a)(1)(A)(i)(I) to recover her economic losses in an amount to be determined at trial.

63.     Plaintiff is entitled to an amount equal to her economic losses under 29 USC § 2617(a)(1)(A)(iii) in liquidated damages.

Page 12 – COMPLAINT

64.     Plaintiff is also entitled to recover her litigation costs and attorney's fees under 29 USC § 2617(a)(3).

**FIFTH CLAIM FOR RELIEF**
**(ORS 659A.199 - Whistleblowing)**
**(Against the SOCC)**

65.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

66.     Plaintiff repeatedly opposed and complained about what she, in good faith, believed to be illegal behavior by SOCC as alleged above in paragraphs 15, 18, 21 through 23, 27, 31 through 33. SOCC was well aware of Plaintiff's opposition to these practices.

67.     SOCC retaliated against Plaintiff in retaliation for raising these concerns as outlined above in paragraphs 28 and 34 through 36.

68.     As a direct and proximate result of SOCC's retaliatory and discriminatory conduct, Plaintiff has a private right of action pursuant to ORS 659A.885(3) and is entitled to recover her economic losses, which she has suffered, and continues to suffer, all to her economic damages in an amount to be determined at trial and including prejudgment interest.

69.     As a direct and proximate result of the foregoing conduct, Plaintiff has suffered severe emotional distress, which includes, but is not limited to, embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss of enjoyment of life, all to her noneconomic damage pursuant to ORS 659A.885 in an amount to be determined at trial.

70.     Pursuant to ORS 659A.885(1) and 20.107, Plaintiff is entitled to an award of attorney's fees, expert fees, and costs incurred herein.

//

Page 13 – COMPLAINT

## SIXTH CLAIM FOR RELIEF
### (ORS 659A.203 - Whistleblowing)
### (Against SOCC)

71.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

72.     Plaintiff repeatedly opposed and complaint about what she, in good faith, believed to be illegal behavior by SOCC as alleged above in paragraphs 15, 18, 21 through 23, 27, 31 through 33. SOCC was well aware of Plaintiff's opposition to these practices.

73.     SOCC retaliated against Plaintiff in retaliation for raising these concerns as outlined above in paragraphs 28 and 34 through 36.

74.     As a direct and proximate result of SOCC's retaliatory and discriminatory conduct, Plaintiff has a private right of action pursuant to ORS 659A.885(3) and is entitled to recover her economic losses, which she has suffered, and continues to suffer, all to her economic damages in an amount to be determined at trial and including prejudgment interest.

75.     As a direct and proximate result of the foregoing conduct, Plaintiff has suffered severe emotional distress, which includes, but is not limited to, embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss of enjoyment of life, all to her noneconomic damage pursuant to ORS 659A.885 in an amount to be determined at trial.

76.     Pursuant to ORS 659A.885(1) and 20.107, Plaintiff is entitled to an award of attorney's fees, expert fees, and costs incurred herein.

## SEVENTH CLAIM FOR RELIEF
### (Title IX)
### (Against SOCC)

77.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

78.     SOCC is a Title IX funding recipient.

Page 14 – COMPLAINT

79.    Plaintiff engaged in Title IX protected activity as alleged above in paragraphs 25 through 27 when she raised concerns about gender discrimination and hostile work environment.

80.    SOCC acted with deliberate indifference when it ignored Plaintiff's complaints and retaliated against her, in substantial part, as alleged above in paragraphs 28 and 34 through 36.

81.    Plaintiff is entitled under Title IX to recover her economic losses in an amount to be determined at trial and including prejudgment interest.

82.    Plaintiff is also entitled to recover her litigation costs and attorney's fees under Title IX.

**EIGHTH CLAIM FOR RELIEF**
**(42 U.S. Code § 1983)**
**(Against Lyon)**

83.    Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

84.    Plaintiff reported gender discrimination, violations of the medical leave laws, and spending mismanagement as alleged above in paragraphs 15, 18, 21 through 23, 27, 31 through 33.

85.    Plaintiff's constitutionally protected expression was a substantial or motivating factor in Lyon's creation of a hostile work environment for Plaintiff.

86.    At all relevant times, Lyon was acting under color of state law, for the improper purpose of curbing Plaintiff's exercise of her right to free speech is guaranteed by the First Amendment.

87.    The actions of Lyon in this regard represent official policies, practices, customs, and usages of SOCC.

Page 15 – COMPLAINT

88.     In the alternative, SOCC was aware of the actions of Lyon and approved of the unconstitutional basis for the actions.

89.     As a direct and proximate result of Lyon's conduct, Plaintiff has suffered lost income and benefits and will continue to suffer lost income and benefits, including prejudgment interest, all to her economic damages in an amount to be determined at trial.

90.     As a direct and proximate result of Lyon's retaliatory conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, loss of enjoyment of life, and physical illness and is entitled to an award of compensatory damages in an amount to be determined at trial.

91.     To the extent that Lyon was acting in her individual capacity, her conduct is described herein as intentional, willful, malicious, and reckless. Plaintiff is entitled to an award of punitive damages against Lyon in her individual capacity in an amount to be determined at trial.

92.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, and costs incurred herein.

**NINTH CLAIM FOR RELIEF**
**(42 U.S. Code § 1983)**
**(Against Mageehon)**

93.     Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

94.     Plaintiff reported gender discrimination, violations of the medical leave laws, and spending mismanagement as alleged above in paragraphs 15, 18, 21 through 23, 27, 31 through 33.

Page 16 – COMPLAINT

95.     Plaintiff's constitutionally protected expression was a substantial or motivating factor in Mageehon's creation of a hostile work environment for Plaintiff.

96.     At all relevant times, Mageehon was acting under color of state law, for the improper purpose of curbing Plaintiff's exercise of her right to free speech is guaranteed by the First Amendment.

97.     The actions of Mageehon in this regard represent official policies, practices, customs, and usages of SOCC.

98.     In the alternative, SOCC was aware of the actions of Mageehon and approved of the unconstitutional basis for the actions.

99.     As a direct and proximate result of Mageehon's conduct, Plaintiff has suffered lost income and benefits and will continue to suffer lost income and benefits, including prejudgment interest, all to her economic damages in an amount to be determined at trial.

100.     As a direct and proximate result of Mageehon's retaliatory conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, loss of enjoyment of life, and physical illness and is entitled to an award of compensatory damages in an amount to be determined at trial.

101.     To the extent that Mageehon was acting in her individual capacity, her conduct is described herein as intentional, willful, malicious, and reckless. Plaintiff is entitled to an award of punitive damages against Mageehon in her individual capacity in an amount to be determined at trial.

102.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, and costs incurred herein.

ELIZABETH FARRELL
Farrell Employment Law, LLC
324 S. Abernethy Street
Portland, Oregon 97239
503-277-2087

### TENTH CLAIM FOR RELIEF
### (42 U.S. Code § 1983)
### (Against Scott)

103.    Plaintiff realleges and incorporates by reference paragraphs 1 through 36, above.

104.    Plaintiff reported gender discrimination, violations of the medical leave laws, and spending mismanagement as alleged above in paragraphs 15, 18, 21 through 23, 27, 31 through 33.

105.    Plaintiff's constitutionally protected expression was a substantial or motivating factor in Scott's creation of a hostile work environment for Plaintiff.

106.    At all relevant times, Scott was acting under color of state law, for the improper purpose of curbing Plaintiff's exercise of her right to free speech is guaranteed by the First Amendment.

107.    The actions of Scott in this regard represent official policies, practices, customs, and usages of SOCC.

108.    In the alternative, SOCC was aware of the actions of Scott and approved of the unconstitutional basis for the actions.

109.    As a direct and proximate result of Scott's conduct, Plaintiff has suffered lost income and benefits and will continue to suffer lost income and benefits, including prejudgment interest, all to her economic damages in an amount to be determined at trial.

110.    As a direct and proximate result of Scott's retaliatory conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, loss of enjoyment of life, and physical illness and is entitled to an award of compensatory damages in an amount to be determined at trial.

Page 18 – COMPLAINT

111.    To the extent that Scott was acting in her individual capacity, her conduct is described herein as intentional, willful, malicious, and reckless. Plaintiff is entitled to an award of punitive damages against Scott in her individual capacity in an amount to be determined at trial.

112.    Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, and costs incurred herein.

### ELEVENTH CLAIM FOR RELIEF
### (Defamation)
### (Against SOCC)

113.    Plaintiff realleges and incorporates paragraphs 1 through 36, above.

114.    Upon information and belief, Plaintiff alleges that Defendant made false, defamatory, and material misrepresentations about Plaintiff's honesty, integrity, and reputation in the community, as alleged above in paragraphs 34 and 36.

115.    Defendant made these material, false, and defamatory misrepresentations to members of the community and to Plaintiff's former employer/contractor (SOWIB), thereby leading people to question Plaintiff's fitness to work in her field and subjecting her to hatred, contempt, ridicule, diminished esteem, respect, goodwill, and confidence.

116.    As a direct result of the material, false, and defamatory statements made by Defendant, Plaintiff has been harmed by a diminished reputation in the community and by losing a source of income, thereby resulting in economic damages in the amount of $32,000.00.  This amount may be amended prior to trial.

117.    As a direct result of material, false, and defamatory statements made by Defendant, Plaintiff has suffered severe emotional distress in the form of which includes, but is

Page 19 – COMPLAINT

not limited to, embarrassment, humiliation, anxiety, emotional distress, depression, and injury to her non-economic damage in an amount to be determined at trial.

118.    As a further result of said conduct, Plaintiff is entitled to her costs, disbursements, expert witness fees, prejudgment interest, and reasonable attorney's fees pursuant to ORS 659A.885 and ORS 20.107.

## TWELFTH CLAIM FOR RELIEF
### (Intentional Interference with An Economic Relationship)
### (Against SOCC)

119.    Plaintiff realleges and incorporates paragraphs 1 through 36, above.

120.    Defendant intentionally interfered with Plaintiff's economic relationship with SOWIB and those parties attempting to contact her via email and phone during her administrative leave for the purpose of engaging her as a consultant/mentor, as alleged above in paragraphs 34 and 36.

121.    As a direct result of Defendant's actions in this regard, Plaintiff has been damaged in the approximate amount of $32,000.00.  This amount may be amended prior to trial.

122.    As a direct result of Defendant's interference with Plaintiff's economic relationship, Plaintiff has suffered severe emotional distress in the form of which includes, but is not limited to, embarrassment, humiliation, anxiety, emotional distress, depression, and injury to her non-economic damage in an amount to be determined at trial.

123.    As a further result of said conduct, Plaintiff is entitled to her costs, disbursements, expert witness fees, prejudgment interest, and reasonable attorney's fees pursuant to ORS 659A.885 and ORS 20.107.

//

Page 20 – COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this Complaint.

WHEREFORE, Plaintiff prays for the relief requested in each of her Claims For Relief and for such other relief as the Court deems just and appropriate.

DATED this 15th day of January, 2024.

Respectfully submitted

/s/ Elizabeth Farrell

Elizabeth Farrell OSB No.011107
farrelllaw@hotmail.com
Attorney for Plaintiff

Page 21 – COMPLAINT